Delivered February 10, 1891.

MARY G. SMITHWICK ET AL. v. WILLIAM KELLY ET AL.

No. 2925.

1. **Disclaimer by a Tenant.**—Action in trespass to try title against a defendant claiming title and his tenant. The tenant disclaimed title in himself and alleged his tenancy under his codefendant. On trial the judgment was for the defendant asserting title. *Held,* that plaintiff was not entitled to judgment upon the disclaimer of the tenant.

2. **Will—Relieving Administration from Probate Court.**—A will simply directed that no bond be required from the executors, and was silent as to the mode of administering under the will, *held,* that the estate was subject to the control of the Probate Court. Rev. Stats., art. 1942.

3. **Appeal from County to District Court.**—Appeal from an order in the Probate Court must be perfected by bond or affidavit of inability to give bond within fifteen days after the entry of such order. Appeal bond filed April 12 from an order March 27 will not confer jurisdiction on the District Court.

4. **Appeal by Executors from Order in Probate Court.**—An executor is not

required to give an appeal bond "unless such appeal personally interests him." Executors appealing as such should give notice of appeal during the term in which the order was entered.

5. **Same.**—No notice of appeal having been given in open court, the executors could not perfect an appeal in behalf of an estate or themselves.

6. **Executors, etc., Appealing.** —There are instances in which executors or administrators would be deemed the representatives of persons interested adversely to one seeking a revision of a decree in probate, but this could not be true when executors were seeking to set aside a decree which simply required them to administer an estate in accordance with the will under which they were acting and with the law.

7. **Notice Necessary to Perfect Appeal—Case Adhered to.**—We are of the opinion that the rule asserted in Battle v. Howard, 13 Texas, 348, is correct, and persons who may not be able to give notice of appeal in open court may have a judgment in probate revised in the District Court on certiorari upon proper application and notice.

8. **Notice— Case Limited.**—Glenn v. Kimbrough, 70 Texas, 148, discussed and limited.

9. **Executors Can Not Mortgage Property.** — Executor's under control of the Probate Court can not mortgage property of the estate to secure debts of the estate.

10. **Illegal Foreclosure Sale.**—A sale of land under a decree enforcing a mortgage made by executors to secure a creditor of the estate will not pass title.

11. **Sale of Property of an Estate.** — The jurisdiction of the Probate Court in reference to the sale of property belonging to estates in course of administration is exclusive, and when it becomes necessary to establish a claim by suit in a District Court, whether the claim be secured by mortgage or not, all that such a court can do is to establish the claim, which must be certified to the Probate Court for settlement. Rev. Stats., art. 2029.

12. **Recovery of Purchase Money upon a Void Judicial Sale.**—If the money bid for the land on sale made on foreclosure was actually paid, and a valid debt of the estase thus satisfied, the land can not be recovered without refunding the money, although the sale was void.

Appeal from Cameron. Tried below before Hon. James B. Wells, Special District Judge.

The opinion states the case.

*W. H. Mason,* for appellants.— 1. In trespass to try title a disclaimer entitles plaintiffs to judgment for the land, and if defendant who disclaims was in possession of the premises when suit was brought, plaintiffs will be entitled to judgment for the land and his costs. Wootters v. Hall, 67 Texas, 513.

2. Executors of a will can not sell real estate independent of an order of the Probate Court, unless there is express power in the will authorizing such sale. Rev. Stats., arts. 1942, 1893, 2058, 2059; Blanton v. Mayes, 58 Texas, 422; Anderson v. Stockdale, 62 Texas, 54; In re Fox Heirs, 11 Am. Rep., 75; Johnson v. Bowden, 43 Texas, 670; Mills v. Herndon, 60 Texas, 354; Cooper v. Horner, 62 Texas, 356; 1 Redf. on Wills, p. 379.

3. Were this an independent will and gave direct authority to sell property, the executors would not by implication be authorized to mortgage property of the estate of the testator.

4. The will of Galvan not authorizing payment of debts, giving no au-

thority to sell property, no authority to mortgage property, and having no elements constituting it an independent will, not even giving authority to administer the estate independent of the Probate Court, can not be a muniment or link in a chain of title to property sold under execution at sheriff's sale, based on a judgment of a District Court foreclosing a mortgage lien attempted to be created by the executors of said will, and it should not have been admitted by the court as evidence of title on the trial of this cause.

5.     The proceeding being wholly *ex parte* and not a proceeding *in rem* had no effect upon and did not prejudice the rights of anyone not made a party thereto by proper citation.

6.     The County Court having no jurisdiction of the matter because of no complaint being made, and for want of citation or notice to the executors before making the order, their appeal therefrom to the District Court did not confer jurisdiction on said District Court. The whole proceeding being a nullity did not affect the rights of any one, or give validity to the acts of said executors, or determine the nature of or powers given in said will.

7.     The order or judgment made by the District Court upon the appeal from the order of the County Court by said executors does not determine the nature of said will nor the authority given therein, nor does it make said will an independent one, nor does it give authority to said executors to pay debts, or to sell property or mortgage same. The whole effect of said District Court's judgment is to declare the want of jurisdiction in the county judge of his own motion to make an order directing the executor how to administer said estate, and declaring the order of said County Court a nullity. Said District Court had no jurisdiction of and did not attempt to construe said will. The construction of the will was not the question before the court.

8.     To make the judgment of a court binding and conclusive, the court must have jurisdiction of the subject matter and of the persons affected thereby. If the judgment is based on a proceeding *in rem* notice must be given by posting or advertising as provided by law, that all persons interested may have opportunity to be heard and contest said proceeding,. Without such notice the judgment is not binding or conclusive.

*Willie, Mott & Ballinger,* for appellees.— 1.     (1) An executor of a will acting independent of the County Court may sell real estate without an order of that court if due administration of the estate under the will and a compliance with its provisions requires such sale.

(2)     An independent executor may do without an order of court whatever an executor administering an estate in that court can do under its orders, unless restrained by the terms of the will.

(3).     An independent executor charged with the duty of paying the

debts or moneyed legacies of the testator, unless otherwise provided in the will, has the implied authority to sell property for the payment of such debts.

(4) The estate of every testator is charged with the payment of his just debts, and it is the duty of the executor to provide for their payment as soon as possible out of the assets of the estate, whether so directed by the will or not; and he may sell property for that purpose if necessary, whether the testator required him to pay debts or the will was silent on the subject.

(5) It is the duty of an independent executor to preserve the property of his testator and administer it for the benefit of these interested in the estate. Where not restrained by the will he must use his own discretion as to the best manner of preserving and administering the estate. In the use of that discretion he may mortgage property for the purpose of securing debts and preventing a sacrifice of the estate, and his acts in this respect can not be questioned in a collateral proceeding.

(6) The will of Galvan contemplated an administration of his estate outside of the Probate Court, and was a legal muniment in the line of appellees' title.

(7) In the will of Galvan Carson and Follian were invested with full title to the estate as trustees as well as executors without bond. The estate was given, devised, and granted to them, and they were to distribute the "avails" in the manner pointed out by the testator. The will contemplated not only a preservation of the estate, but a conversion of the property into money for the payment of debts and moneyed legacies, and that this might be done by Carson or Follian either as trustees or executors, and that their acts in the line of the trust should be valid, whether sanctioned by the Probate Court or not. Rev. Stats., art. 1942; 2 Will. on Exrs., 934, 935; Todd v. Willis, 66 Texas, 704; McDonough v. Cross, 40 Texas, 280; Howard v. Johnson, 69 Texas, 655; Mayes v. Blanton, 67 Texas, 245; 2 Perry on Trusts., secs. 766–768; 3 Jarm. on Wills., 58, *et seq.;* 2 Redf. on Wills, 333, 334, secs. 33, 34; Schoul. on Exrs., sec. 511; Petrie v. Clark, 2 Serg. & R., 388.

2. (1) The executor or administrator and the heirs and other distributees of an estate are parties to all proceedings of a Probate Court relating to the same, and no notice of any proceeding therein is necessary to its validity except when so provided by law, and the statutes do not provide for notice of such a proceeding as that complained of in this assignment of error.

(2) When such a case reaches the District Court on appeal it is tried *de novo,* and not merely upon the rulings of the County Court upon questions raised in that court. The court above does not pass upon the regularity of the proceedings in the Probate Court, but upon the merits of the cause in the same manner as if it had never been tried before; and the

record here showing that the case was regularly heard upon appeal before the District Court, and that this court adjudged Carson and Follain to be independent executors and not merely that they were entitled to notice of the proceedings in the Probate Court, the presumption is that the issue as to the nature of the executorship was directly before the court, and that the proper parties were before it, the record not showing to the contrary; and the court having jurisdiction of the question and of the parties, and no appeal from its judgment having been taken, its judgment can not be attacked collaterally in this proceeding. Newton v. Newton, 61 Texas, 511; Rev. Stats., arts. 1826, 2207; Murchison v. White, 54 Texas, 78, and authorities; George v. Watson, 19 Texas, 354; Grignon's Lessee v. Astor, 2 How., 319; Freem. on Judg., sec. 319a; Waples' Proc. in Rem, p. 702, *et seq.;* Guilford v. Love, 49 Texas, 715.

3.   (1)   If the executors were independent of the County Court the fact that they executed the mortgage to secure the debt was sufficient proof of the debt, as the validity of an indebtedness in such cases is left to the discretion of the executors, and such claims are not required to be established through the Probate Court.

(2)   A sale of property for the payment of an alleged debt against a decedent can not be collaterally attacked on the ground that the debt did not exist, whether the estate is administered in the Probate Court or out of it; nor in such a collateral proceeding will the court set aside a sale because the debt might have been paid out of assets other than the property sold in satisfaction of the same.

(3)   It was proved on the trial of this cause that Galvan, at the time of his death, did owe the debt in question which the mortgage was executed to secure.

(4)   The District Court having decreed that Carson and Follain were independent executors, and ordered them to administer the estate without reference to the Probate Court, and having certified this order to the latter court for observance, and this decision standing as the judgment of both these courts and unappealed from at the time the mortgage was executed, as well as when the suit to foreclose was commenced and determined, the property sold under the foreclosure and bought by W. P. Sutton, as well as when it was purchased from him by Dalzell and a valuable consideration paid for it, Dalzell was an innocent purchaser in good faith, without notice of any illegality in the title, and obtained a good title under our statutes and the general law, whether the proceedings under which he obtained it were valid or not.   Rev. Stats., art. 1826; McDonough v. Cross, 40 Texas, 285; French v. Grenet, 57 Texas, 273; Jones v. Smith, 55 Texas, 383; Bailey v. White, 13 Texas, 114; Burns v. Ledbetter, 54 Texas, 374.

4.   It is immaterial as to what construction the County Court originally gave to the will, as it subsequently held that the executors must act

under the orders of the Probate Court, and on appeal this order was set aside, and the executors directed to act without reference to the court. Wright v. Doherty, 50 Texas, 34; Jones v. Smith, 55 Texas, 383; McDonough v. Cross, 40 Texas, 285; Burns v. Ledbetter, 54 Texas, 374; Howard v. Johnson, 69 Texas, 659; Acklin v. Paschal, 48 Texas, 173.

5. The appellants had no right to bring this suit as heirs, the estate being still in course of administration by the executors, there being numerous legatees and beneficiaries under the will besides themselves, and the land in controversy not having been devised to the plaintiffs. Acklin v. Paschal, 48 Texas, 173.

STAYTON, CHIEF JUSTICE.—This action, in form trespass to try title, was brought by appellants, who are the sole heirs of Jeremiah Galvan, deceased.

That the land belonged to Galvan at the time of his death, which occurred in June, 1879, is conceded.

He died testate, and his will was as follows:

"In view of a contemplated sea voyage, the uncertainty of life, and the complications which may arise in case of my sudden decease in the settlement of my estate, I do give, devise, and grant unto Thomas Carson, of Brownsville, State of Texas, and G. Follain, of Matamoros, Mexico, all of my property, both personal and real, that I may be seized of at my death, in the State of Texas, Republic of Mexico, or elsewhere; in trust, nevertheless, as to the whole of said property, personal and real, and all receipts, rents, and dues from same; for the uses and purposes which I may hereafter propose or provide by a further testament, then such avails of said property are to be by them accounted for and apportioned or divided among my heirs according to law; provided, however, that my executors hereinafter appointed shall pay to my esteemed friend, John Clark, of Brownsville, State of Texas, out of my estate an annuity of $600, to be paid to him quarterly.

"I do hereby appoint Thomas Carson, of Brownsville, State of Texas, and G. Follain, of Matamoros, Republic of Mexico, to be my executors and trustees of my will, and that no bond be required from them as such executors."

The codicil gave moneyed legacies to the amount of $7750, besides providing for the annual payment to the other legatees of sums amounting each year to $2600, and monthly payments of $65 each, also to legatees. The will and codicil were probated and letters testamentary granted to Carson and Follain and they qualified as executors.

The inventory showed the estate to consist of real estate to the amount of $63,600; personal property, $24,691; claims and accounts, $49,181.

On March 27, 1880, the Probate Court, without notice to the executors, adjudged that it was their duty to administer the estate under the orders

and control of that court without being required to give bond, and made an order as follows: "It is therefore ordered by the court that the administration of said testator's estate under the will as aforesaid shall in all respects (save and except in the matter of executing bond by the executors named in said will) be governed by the provisions of the law respecting the administration of intestates' estates; and that the executors in said will, viz., Thomas Carson and G. Follain, who have heretofore qualified as executors as aforesaid under said will, be and they are hereby ordered to refrain from administering said estate of the testator aforesaid in any other manner than according to the provisions of the law respecting the administration of intestates' estates. Ordered that the executors named as aforesaid be cited to make a full exhibit of all their acts and doings in the administration of the estate of said testator's estate, and that they report the said exhibit to the next term of this court."

On April 12 following, in vacation, a paper was filed in the County Court, which was as follows:

"Now comes Thomas Carson and G. Follain, executors of the estate of Jeremiah Galvan, deceased, and hereby give notice of appeal to the District Court of Cameron County, Texas, from the order and decree of this court made in the matter of this said estate on the 27th day of March, A. D. 1880, and entered on page 370, book E, of the minutes of this court, because this said court had no jurisdiction or right under the law to make such order and decree, and because said executors nor either of them were ever cited or in any manner notified to appear and show cause why said order and decree should not be made, or in any manner notified of the making of said order until after the same was so made; and the appeal bond of the said Carson and Follain, executors as aforesaid, in this matter is now here fixed by the court in the sum of $1000; and upon filing of the bond with good and sufficient sureties, so conditioned as the law requires, the clerk of this court is hereby ordered to make out a duly certified transcript of all the papers and proceedings relating to the order and decree appealed from, together with said order and decree, and transmit the same to the clerk of the District Court for Cameron County; * * * and the clerk of this court is hereby ordered to at once enter this order upon the minutes of this court.

[Signed]                                        "James M. Hays,
                                                   "County Judge."

The appeal bond was approved and filed on the same day, and on the 24th day of August, 1880, the following judgment was entered in the District Court:

"And now on this 24th day of August, this appeal coming on to be heard in its regular order upon the docket, the court, after hearing the pleadings and argument of counsel and duly considering of the same, is of the opinion that the order of the said County Court of March 27, 1880, ap-

pealed from herein is erroneous and without warrant of law, wherefore it is now here by the court considered, adjudged, and decreed that the same order of the County Court of the 27th day of March, A. D. 1880, be and hereby is in all things reversed, annulled, and set aside; that the said executors, Thomas Carson and G. Follain, continue to administer the estate of the said Jeremiah Galvan, deceased, without the County Court, as they have heretofore done before the making of said order of March 27, 1880, and that this order be certified to the County Court for observance."

At the time the testator died he was indebted to Edward Downey $3609, and he having died, the executors in that capacity, on May 15, 1883, executed to Mrs. Downey, sole heir of her husband, a mortgage on the property in controversy to secure the payment of that debt. This debt and mortgage were assigned to G. W. Miller, who instituted suit thereon against Carson and Follain as independent executors of the will of Galvan, and that resulted in a judgment against the executors as " executors of the last will and testament of Jeremiah Galvan, deceased," for the sum due, with foreclosure of mortgage, directing the seizure and sale of the property, and further directing execution against the estate in hands of the executors in the event the mortgaged property did not sell for enough to satisfy the judgment.

Process issued under that judgment on December 2, 1886, under which the property was sold and purchased by Sutton, to whom the sheriff made a deed, and Sutton subsequently sold to the defendant Dalzell, under whom the other defendant held as tenant when this action was brought.

The court below held that the will required the executors to administer the estate without control of the Probate Court; that the executors had power to make the mortgage to Mrs. Downey; and that the sale made on its foreclosure passed title to the land in controversy.

The conclusion that the executors were freed from the control of the Probate Court seems to have been rested on the proposition that the will so required, and on the further proposition that the decree of the District Court on appeal was conclusive upon that question.

The court further held that if title had not passed by the sale made under process issued in foreclosure of the mortgage, that appellants could not recover without refunding the purchase money.

Defendant Kelly answered by a plea of not guilty, and then alleged that he held possession of the property in controversy only as the tenant of his codefendant, and it is insisted that a judgment should have been entered against him as in case of an ordinary disclaimer, although judgment was rendered in favor of his landlord.

In this proposition we do not concur. If in such a case such a judgment should be entered we would have the anomaly of a judgment in effect declaring that the landlord's title was valid, and a further judgment under

which his tenant might be dispossessed under process issued in favor of one who was adjudged to have no title at all or right to possession.

We will not attempt to follow the assignments of error in the order presented, but will notice all questions believed to be important in the decision of this appeal.

The will simply directs "that no bond be required from them as such executors," but it contains no expression of a desire that they should administer the estate, in so far as it might be necessary for them to do so as executors, freed from the control of the Probate Court.

The statute provides that "when any testator shall direct in his will that no security shall be required of the person named therein as executor, letters testamentary shall be issued to such person without any bond being required," etc. (Revised Statutes, article 1893), but, as has been correctly held, such a provision in a will does not withdraw the estate from the control of the Probate Court. Lewis v. Nichols, 38 Texas, 54.

The statute which permits a testator to withdraw his estate from the control of the Probate Court is as follows: "Any person capable of making a will may so provide in his will that no other action shall be had in the County Court in relation to the settlement of his estate than the probating and recording of the will and the return of an inventory, appraisement, and list of claims of his estate." Rev. Stats., art. 1942.

There is nothing in the will in question indicating an intention that the Probate Court should not have control of the administration of the estate, and such intention can not be inferred from the fact that he relieved the executors from necessity to give bond, when under the law this may be done although the estate in all other respects must be administered under the control of the Probate Court.

The order requiring the executors to administer the estate as the law required was entered on March 27, 1880, and no steps were taken to perfect an appeal until April 12, when proceedings were had on which it is claimed an appeal was perfected.

Without entering into an inquiry whether the *ex parte* order of the Probate Court was such as the executors could appeal from, and without considering what would be the effect of the judgment rendered by the District Court on that attempt to appeal had it acquired jurisdiction, an inquiry will be made whether the District Court acquired jurisdiction to hear the matter and enter any decree at all.

District Courts "have appellate jurisdiction and general control in probate matters over the County Court established in each county for appointing guardians, granting letters testamentary, and of administration, for settling the accounts of executors, administrators, and guardians, and for the transaction of business appertaining to estates; and original jurisdiction and general control over executors, administrators, guardians, and

minors, under such regulations as may be prescribed by the Legislature."
Const., art. 5, sec. 8.

The Legislature has provided regulations whereby the appellate juris-
diction of the District Court may be made to attach in such cases.    This
may be done by certiorari; but there can be no claim that this regulation
was complied with by the executors in their effort to have the decree of
the County Court revised.

The other mode is by appeal, and the Legislature has prescribed that a
person who may desire to appeal may do so by filing with the county clerk
" within fifteen days after such order, judgment, or decree shall have
been rendered, a bond with two or more good and sufficient sureties, pay-
able to the county judge, and to be approved by the clerk," conditioned
as the statute requires.    Rev. Stats., art. 2201.

If unable to give bond, the person desiring to appeal may do so if within
the time prescribed for giving bond he file an affidavit of his inability,
as prescribed by the statute.    Rev. Stats., art. 2203.

An executor is not required to give an appeal bond " unless such appeal
personally concerns him."    Rev. Stats., art. 2202.

The appeal bond must be filed within fifteen days after the decree ap-
pealed from is rendered; and excluding the day of rendition, the appeal
bond was not filed until after the fifteen days had expired.

In Burr v. Lewis, 6 Texas, 76, this court had affirmed a judgment on
certificate, and a motion for rehearing was filed during the term, asking
that the judgment of affirmance be set aside on the ground that the court
had no jurisdiction of the case because the appeal bond was filed on the
twenty-first day after the adjournment of the District Court for the term
at which the judgment was rendered.    At the succeeding term the mo-
tion for rehearing, as well as a motion to recall a mandate that had im-
providently issued, was acted upon.    It was held that as the appeal bond
was not filed within twenty days this court did not acquire jurisdiction.

In disposing of the case it was said:  " To constitute an appeal perfected,
the appellant must give notice of appeal during the term, and within
twenty days after the term he must give bond for the prosecution of the
appeal.    Until these two constituents of an appeal concur there is no ap-
peal.    Neither of itself is sufficient; and although notice be given, until
the bond is also given the appeal is incomplete and ineffectual and the
jurisdiction of the appellate court does not attach.    *   *   *   If the case
was not legally before us at the last term when the judgment was ren-
dered it is immaterial at what term the application was made; for if the
judgment be a nullity it may be so declared upon motion at a subsequent
term.    *   *   *   We are of opinion that the case was not legally before
the court when the judgment of affirmance was rendered, and that judg-
ment was consequently a nullity.    It must be so declared and the man-
date directed to the District Court must be revoked."

This broad statement may be subject to qualifications or exceptions, but if so it is not necessary in this case to consider them, for they would have no application to the case before us.

If the rule stated in the case here cited be correct when there is a general grant of appellate jurisdiction, the reason for enforcing it is much stronger when jurisdiction is only granted to be exercised under such regulations as the Legislature may prescribe. The record makes it clear that no notice of appeal was given during the term of the County Court, and that no appeal bond was filed within the fifteen days prescribed by the statute.

The appeal bond was not executed by Carson and Follain as executors, and the inference is almost irresistible that they intended to prosecute an appeal to protect what they supposed to be their personal interests. If, however, it be held that they attempted to prosecute an appeal as executors for the benefit of the estate the same result would follow.

No notice of appeal having been given in open court, the executors could not perfect an appeal on behalf of the estate or themselves. In appellate proceedings notice to persons adversely interested is as necessary as in proceedings original in character; and notice in such cases when not otherwise directed to be made must be given in open court and this made to appear in the record of the proceedings in the case, for when a final judgment is entered and a term closed neither the case nor parties are before the court, and it would be manifestly unjust to permit one party to prosecute appellate proceedings without notice to the party adversely interested. The necessity for this in probate proceedings is made more apparent by the proposition of appellees in this case, who say that all parties interested in an estate are presumed to be present when proceedings are transacted affecting it, unless in cases in which the law requires them to be cited, and they claim that for this reason parties interested in the estate were before the Probate Court when it entered the *ex parte* order.

If that be conceded, without notice of appeal given in open court, they seem authorized to believe that the decree there rendered was final, unless someone entitled to do so sought to have it revived on certiorari, in which event it would have been necessary for the party seeking such revision to have filed an application stating the names and residences of the persons adversely interested, and it would have been necessary to cite the persons thus shown to be adversely interested. Rev. Stats., arts. 291, 296.

If an application had stated that the county judge alone was the person adversely interested, it would have been fatally defective, for in such a matter that officer would not be a party adversely interested within the meaning of the law, but creditors, legatees, devisees, and heirs would be.

There are instances no doubt in which executors or administrators would be deemed the representatives of persons interested adversely to one seeking a revision of a decree in probate, but this could not be true when exe-

cutors were seeking to set aside a decree in probate which simply required them to administer an estate in accordance with the will under which they are acting and with the law. In appeals from Justice Courts it is necessary that notice of the appeal should be given to the adverse party, and the statute prescribes how this shall be given. Rev. Stats., art. 1639.

We have referred to the necessary procedure when revision is sought through certiorari to illustrate the fact that notice of appeal is in all cases necessary before an appellate court can acquire jurisdiction, unless notice is in some manner waived.

Now, as heretofore, the statutes regulating appeals in probate proceedings do not in terms require notice of appeal to be given in open court, but the statutes in force now in no respect affecting the question before us differ from the Act of March 20, 1848 (Paschal's Digest, articles 1383, 1384), under which, in Battle v. Howard, 13 Texas, 348, it was said: "Such a provision is not necessary to the right of appeal. On general principles he who would appeal from the judgment of any court must do so in open court at the time when the judgment is procured, and the fact should appear in the proceedings of the case. This is all the notice which, in practice, the law has been held to require in any case. In the present case the administrator appealed from the judgment of the Probate Court and the fact was entered of record, and we are of opinion that nothing further was necessary to give the District Court jurisdiction."

It ought to be presumed that in carrying the Act of March 20, 1848, above cited, into the Revised Statutes it was intended it should receive the construction theretofore placed upon it.

In the case cited we understand the court to have meant by "the time when the judgment was procured" the term at which the judgment was rendered.

That notice should be thus given we have no doubt in the absence of a law requiring notice to be given in some other manner.

In Glenn v. Kimbrough, 70 Texas, 148, there is a statement that notice of appeal from a decree in probate was not necessary; but in that case a bond was filed within the time prescribed by law, and it may be that it was intended in such cases that parties adversely interested should take notice of that fact and thus have notice of an appeal; but if so, that could not affect this case, for the bond in question was not filed within fifteen days after the decree in probate was rendered, and it can not be held that appellants or others interested in the estate of the testator were bound to take notice of the filing of a bond after the time had elapsed within which the law permitted a bond to be filed.

We are, however, of opinion that the rule asserted in Battle v. Howard is the correct one, and persons who may not be able thus to give notice of appeal may have a judgment in probate revised in the District Court on certiorari upon proper application and notice.

The views expressed lead to the conclusion that the District Court for Cameron County had not jurisdiction to revise or set aside the decree of the Probate Court.

That the executors, under the terms of the will, had no power to mortgage the property of the estate is clear.    To recognize such a power would practically annul the statutes which determine the classification of claims. The will gave no such power.

It is equally clear that the sale of the property in controversy under the judgment of the District Court foreclosing the mortgage did not pass title.

The jurisdiction of the Probate Court in reference to the sale of the property belonging to estates in course of administration is exclusive, and when it becomes necessary to establish a claim by suit in a District Court, whether the claim be secured by mortgage or not, all that such a court can do is to establish the claim, which must be certified to the Probate Court for settlement.

The statute provides that "no execution shall be issued on a judgment obtained in any such suit, but a certified copy of such judgment shall be filed with the clerk of the County Court where the estate is pending within twenty days after the rendition of such judgment, and entered upon the claim docket, and shall be classified by the county judge, and have the force and effect as if the amount thereof had been allowed by the executor or administrator and approved by the county judge." Rev. Stats., art. 2029.

Any process issuing from a District Court under which property may be sold is within the meaning of the law an execution.

It clearly appears that Carson and Follain qualified as executors, and that they were acting in that capacity when the mortgage was given, foreclosed, and sale made under it; and it must be held that what they did was done in that capacity and not as trustees.    They were doubtless appointed executors in order that they might conduct the ordinary administration of the estate, the necessity for which is shown; and until that was closed it is not to be presumed that they intended to assume the right to act or that they had authority to control the estate as trustees.

It therefore becomes unnecessary to inquire what powers as trustees they might lawfully exercise under the terms of the will in order to carry out the wishes of the testator.

If the money bid for the land on sale made on foreclosure was actually paid and a valid debt of the estate thus satisfied, appellants can not be permitted to recover the land without refunding the money, although the sale was null.

No question as to the right of appellee to have such money as may have been so paid was made by pleadings or the evidence, and as the judgment will be reversed and the cause remanded on account of matters before referred to, such pleadings may hereafter be filed and such an issue tried as

will enable the court below to adjust any equities that may exist between the parties.

We are of opinion that sufficient facts are shown to entitle appellants to prosecute this action.

The judgment will be reversed and the cause remanded.

*Reversed and remanded.*

Delivered February 10, 1891.