WILLIAM VARDEMAN AND OTHERS v. HENRY M. LAWSON AND OTHERS.

Where it was assigned for error in a suit for specific performance of a lost bond for title, that there had not been sufficient evidence of the contents of the bond this Court said: There does not appear to have been any question made by the plaintiff in error as to the terms of the bond. When called on to make title, he virtually admitted that he had contracted to do so; and placed his refusal upon other and quite different grounds from those suggested in argument.

### Vardeman v. Lawson.

There can be no doubt or uncertainty as to what is to be understood by a bond for title. It is an instrument which evidences a contract for the sale of land ; and is substantially an agreement by the vendor to make to the vendee a title to the land purchased. Where the purchase money is paid it vests in the purchaser the equitable title, under our law, sufficient to enable him to recover and defend the possession, in any action wherein his right to the possession may be drawn in question ; it is superior to the legal title remaining in his vendor ; and a court of equity will compel a specific performance, by decreeing a conveyance by the vendor, of the legal title.

By having given a bond for title, it is understood, in this country, certainly in this State, that the vendor has contracted to make to the purchaser a good and valid legal title, with the usual covenants of warranty, in the form prescribed by the Statute concerning conveyances. (General warranty.)

Where, upon the sale of land, it appears that a bond for title has been given, without more, it is understood that the vendor has contracted that the purchaser shall have a good title : that is, a deed of conveyance valid and effectual to pass the title in the ordinary and statutory form containing the usual covenant of warranty.

The Statute of limitations has no direct application to suits for specific performance. And where lapse of time is relied on as a defence, it must be set up, as a defence, by plea or exceptions.

The defendants in error paid the purchase money and shortly after the purchase went into possession under the contract, and have so continued. Their's is the superior and better title ; and though a conveyance of the legal title was not necessary to the maintenance of their right, as against their vendor; yet, while the legal title was retained by the vendor, it was a cloud over their title, which they had the right to have removed, and which it was important to them should be removed. (It was over ten years since the date of the bond, and the obligees had been in possession nine years ; and this was said in answer to argument of stale demand.)

A bequest of slaves to trustees for the proper use and benefit of a married woman, but to be in no wise subject to the liabilities or contracts of the said James Butler, her husband, from whom she is now separated ; she to have the possession and control of said property, subject to the advice and disposal of the trustees ; but should she survive her husband, James G. Butler, or be otherwise legally divorced from him, then and in that case the said property is to be no longer the property of said trustees, but to vest absolutely and entirely in her ; Butler having died or the legatee having been divorced from him, she married another husband, in the State of Alabama where the bequest was made, and where the common law of England was proved to be in force ; Held, that by the second marriage the slaves became the property of the husband.

It would seem that where the proof is that the common law of England was in force in another State, whose laws determined the question at issue, it is proper for the Judge to instruct the jury as to the common law upon the very question.

Error from Rusk.  Tried before the Hon. W. W. Morris.

Suit commenced Oct. 15th, 1853, by Henry M. Lawson and others against William Vardeman for the specific performance of a bond for title.  The bond was alleged to be lost.  Ailcy D. Vardeman, wife of said William, filed her petition of intervention against both the plaintiffs and defendant, to recover the land in controversy, on the ground that it had been purchased with her separate property, of which she alleged the obligees in the bond had notice.

The facts were that Ailcy's mother died in 1832, in the State of Alabama, leaving a last will and testament which contained the following bequest : "I give and bequeath unto Wi.liam G.
" Hester and James Nicholson, in trust for my daughter Ailcy
" Dickson, who has been married to James G. Butler, but from
" whom she is now separated, my negro woman named Violet
" and her increase, also my negro boy named John, together
" with" &c., &c., "to have and to hold the aforesaid negro wo-
" man and boy " &c., &c., "for the proper use and benefit of Ailcy
" Dickson, my daughter as aforesaid, and to the heirs of her
" body ; but to be in no wise subject to the liabilities or con-
" tracts of the said James G. Butler, her husband ; but she is to
" have the possession, use and control of said property, subject
" to the advice and disposal of my said trustees.   And in case
" the said Ailcy Dickson dies without issue then the aforesaid
" property is to be equally divided amongst her sisters, my daugh-
" ters ; but should the said Ailcy survive her husband, James G.
" Butler, or be otherwise legally divorced from him, then and in
" that case the said property is to be no longer the property of
" said trustees, but to vest absolutely and entirely in her, the
" said Ailcy Dickson.

After the death of Butler, or after the divorce of Ailcy from him, (The statement of facts read thus.—Rep.) she married William Vardeman, in Alabama, in 1834, having said slaves then in her possession.  Vardeman and wife came to Texas in 1838 or 1839, and purchased the land in controversy, paying there-

for with the said slaves, and went into possession and cultivated the same. The deed for the land was taken to the husband, William Vardeman.

In the year 1843, on the 3d of Oct., in the State of Alabama, William Vardeman executed a bond for title to the land in controversy, to the plaintiffs, being paid for the same in full, in slave property, at the time. Ailcy was not present when the said sale was made, but expressed herself satisfied when she heard of it. In 1844 the obligees in the bond went into possession of the land, and occupied it ever since without interruption. Before the commencement of the suit William Vardeman refused to make the title; said the title was in his wife, and that he could not and would not make title, and that the bond was not recorded and was therefore worthless, and that therefore he would not make title. " The conditions of the " bond were not in proof, except as shown in the admissions and " statements of the pleadings of Ailcy and William Vardeman, " and the oral testimony and depositions, the substance of which " is herein set out. The loss of the bond was fully proved. The " Common Law of England and Statute of frauds were in force " in Alabama when Vardeman and Ailcy married in that State " and for many years before and after."

In the petition of intervention, the making of the bond was alleged. Vardeman's answer contained a general demurrer, general denial, and plea "that the plaintiffs' cause of action, if it ever existed, accrued more than four years before the commencement of this suit." To the plea of limitation the plaintiffs filed a general demurrer, which was sustained.

The Judge charged the jury as follows:

By the terms of the will, in evidence, on the divorce of Butler from his wife Ailcy Vardeman, or on the death of said Butler, the property in the negroes Violet and John vested absolutely in Ailcy Vardeman, and by the marriage of said Ailcy with the defendant William Vardeman, in the State of Alabama, the right and property, by virtue of said marriage and

the law of Alabama, vested absolutely in William Vardeman as his separate property.

If you find clearly to your satisfaction, from the proof, that William Vardeman executed the bond for title to land as named in the petition, and you are reasonably convinced, by the proof, of the death or divorce of Butler, the former husband of said Ailcy, and her subsequent marriage in the State of Alabama with Vardeman, you will find for the Lawsons.

If the above facts are not made put, you will find for Vardeman and wife.

At the request of counsel for William the Judge gave the following instructions:

That although the existence of the bond for title and the loss may have been proved, yet the terms of said bond must be proven in a clear and unmistakable manner, in order to entitle the plaintiffs to a specific performance of said bond.

That the admissions of Ailcy D. Vardeman in the pleadings, as to the existence of said bond, did not bind William Vardeman, and cannot be taken into consideration in the case, against said William Vardeman.

Verdict for plaintiffs, and decree vesting the title in them "and that a copy of this decree issue to them as their muniment "of title to said land, and that the same stand for and in lieu of "a warranty deed to the same from William Vardeman to said "plaintiffs."

Writs of error by William and Ailcy Vardeman.

*M. Casey*, for plaintiffs in error.

*W. Stedman*, *Henderson & Jones*, and *Bowdon*, for defendants in error.

WHEELER, J. Two grounds are relied on by the plaintiff in error, William Vardeman, for reversing the judgment: 1st.

Vardeman v. Lawson.

That there was not sufficient evidence of the contents of the bond, or contract to convey, to entitle the plaintiffs to the verdict and decree thereon for specific performance : 2d. That the action was barred by the lapse of time, and the Court erred in overruling the plea of the Statute of limitations.

Upon the first point it is to be observed, there does not appear to have been any question made by the plaintiff in error, or any other controversy as to the terms of the bond. When called on to make title, he virtually admitted that he had contracted to do so ; and placed his refusal upon other and quite different grounds from those suggested in argument. The proof is clear and positive that the plaintiff in error sold to the defendants in error the land in question : that he was paid the price; and that he gave his bond for title to the land described in the petition. There was, and is, no question raised upon record, as to the particular terms and stipulations of the bond, or any limitation or reservation by its terms, as to the title to be conveyed ; there was no question of the fairness of the contract in every particular, the adequacy of the consideration, and the ability of the vendor to make title.

There can be no doubt or uncertainty as to what is to be understood by a bond for title. It is an instrument which evidences a contract for the sale of land ; and is substantially an agreement by the vendor to make to the vendee a title to the land purchased. Where the purchase money is paid, it vests in the purchaser the equitable title, under our law, sufficient to enable him to recover and defend the possession in any action wherein his right to the possession may be drawn in question ; it is superior to the legal title remaining in his vendor ; and a Court of equity will compel a specific performance, by decreeing a conveyance, by the vendor, of the legal title. (2 Story; Eq. Sec. 715 ; 4 Tex. R. 165. 11 Id. 237.)

By having given a bond for title, it is understood in this country, certainly in this State, that the vendor has contracted to make to the purchaser a good and valid legal title, with the

usual covenants of warranty, in the form prescribed by the
Statute concerning conveyances. (Hart. Dig. p. 128 *et seq.*
Art. 169, 170 ; Patterson v. Goodrich, 3 Tex. R. 331 ; Rawle
on Covenants for Title, Chap. XI.) Mr. Rawle, in concluding
his review of the cases upon the question, what covenants for
title the purchaser has a right to expect, observes, " There is
" indeed a guiding principle to the construction of all these
" cases. It is familiar law, that the general principles of the
" contract of sale, both in this country and England, recognise
" and enforce, while it is still executory, the right of the pur-
" chaser to a title clear of defects and incumbrances. This
" right is one not growing out of the agreement of the parties,
" but which is given by the law, and it naturally follows that
" a Court of equity will not decree the specific performance of
" a contract, where the title is bad, or even, as it has been said
" in modern times, where it is doubtful. Hence, when an in-
" cumbrance exists, which it was not agreed upon should enter
" into and form a part of the consideration, the vendor must
" discharge it before he can call for a completion of the sale.

" The law then, recognizing, *prima facie*, a necessary impli-
" cation of a good title in every contract for the sale of real
" estate, it follows that an agreement by which such a settled
" rule is to be disregarded, should be couched in the most ex-
" press terms, and as the law further recognizes the purchaser's
" rights to covenants for the title, it is difficult to perceive how
" an agreement to convey ' by a sufficient warranty deed,' or
" words of similar import, can weaken the agreement, which
" the law implies from the mere relation of vendor and pur-
" chaser." (Rawle on Cov. 566, 2d. edit.) Upon this princi-
ple, as well as usage, where there has been a sale of land and
a bond for title, and there is nothing in its terms or stipula-
tions by which a different intention is manifest, it is to be taken
that a title, valid and effectual to secure the purchaser in the
full, free, and uninterrupted possession and enjoyment of the
land was intended. What is meant by a bond for title, is as

well understood in our practice respecting the sale and conveyance of lands, as what is meant by a warranty deed, or a good title, or any words of like import ; and where, upon the sale of lands, it appears that a bond for title has been given, without more, it is understood that the vendor has contracted that the purchaser shall have a good title ; that is, a deed of conveyance, valid and effectual to pass the title, in the ordinary and statutory form, containing the usual covenant of warranty. We are of opinion, therefore, that the evidence was sufficient to entitle the defendants in error to the verdict and decree rendered in their favor.

If the general charge of the Court was less favorable to the plaintiff in error than it might have been, the objection was removed by the instruction given at his instance. His counsel pursued the correct practice, by asking further instructions, where those given by the Court were thought not fully to embrace the law of the case ; he had the benefit of the instructions asked, and cannot complain of the ruling of the Court in that respect.

The Statute of limitations of four years was pleaded ; but that was no answer to the action. The Statute has no direct application to suits for specific performance. (4 Tex. R. 159.) And where lapse of time is relied on as a defence, it must be set up, as a defence, by plea or exceptions. (De Witt v. Miller, 9 Tex. R. 239.)

But if the lapse of time had been pleaded, it would not have been available as a defence under the circumstances of this case. Where the purchase money has been paid, and a bond taken for title (it was said by this Court, in Mitchell v. Sheppard) ten years or more under some circumstances which may be imagined, as, for instance, where the vendee goes into possession under the contract, must elapse before specific relief would be denied. (13 Tex. R. 484 ; and see Holman v. Criswell, 15 Id. 394 ; Stramler v. Coe, Id. 211.) The defendants in error paid the purchase money, and shortly after the purchase

went into possession under the contract, and have so continued. Theirs is the superior and better title ; and though a conveyance of the legal title was not necessary to the maintenance of their right, as against their vendor, yet, as suggested by their counsel in argument, while the legal title was retained by the vendor, it was a cloud over their title, which they had the right to have removed, and which it was important to them should be removed ; the more especially, as their bond for title had been lost, and, it seems, had not been recorded. And we are of opinion, that neither the Statute of Limitations pleaded, nor the lapse of time was sufficient, under the circumstances, to preclude their right of action, for a specific performance of the contract to convey the legal title. (See, upon this point, Barlow v. Whitlock, 4 Monroe, 180, 194—200.) We see no error in the judgment, as to this plaintiff in error.

The other plaintiff in error assigns as error, the opinion and charge of the Court upon the construction of the clause of the will, under which she claims, that the negroes bequeathed to her, and which were given in exchange for the land in question, remained her separate property after her intermarriage with her present husband, to the exclusion of his marital rights.

It is undoubtedly true, that all the parts and provisions of the will are to be looked to, to ascertain the intention of the testatrix. And it is also true, that the will sufficiently manifests the intention to exclude the marital rights of the then husband of the plaintiff, from whom, it is said, she was separated. But it is not perceived that there is anything to warrant the conclusion, that it was the intention of the testatrix to create a separate estate in the wife, to the exclusion of the marital rights of any future husband. On the contrary, it seems clear that the intervention of trustees, and the direction given to the bequest, in case of the death of the beneficiary without issue, was intended for the sole purpose of excluding the marital rights and power of control, disposition or incumbrance of the

property, by her then husband, Butler ; for, in the event of the extinction of his marital rights, by death or divorce, it is declared that the property "is to be no longer the property of the said trustees, but to vest absolutely and entirely in the said Ailcy Dixon." It would be difficult to employ language better or more certainly to express concisely the intention to vest in her the absolute, unqualified, and unlimited right and power of disposition over the property, in whatever manner she might see proper to use or dispose of it.

There is no doubt that if the bequest had been expressed in words indicative of an intention to create in the plaintiff a separate estate in the property for her exclusive use ; or if such intention could be deduced from the will, a Court of Equity would give effect to that intention ; and would protect her rights, against the disposition of her property by her present husband. But it is held, the intention to create such estate for her separate and exclusive use, must clearly appear, beyond a reasonable doubt, in order to authorize a Court of Equity to act upon it, to the exclusion of the husband's ordinary, legal and marital rights over the property. (2 Story, Eq. Sec. 1381 ; Nimmo v. Davis, 7 Tex. R. 26.) Such is the doctrine of the Common Law and the law of the State of Alabama, by whose laws the effect of. the bequest, in this instance, is to be determined. (O'Neil v. League, 8 Ala. 345.) It does not appear that such was the intention of the testatrix in this case.

The event in contemplation of the testatrix having happened, the trust estate was determined, and the property became vested absolutely in the beneficiary. Having the possession and the absolute right of property, her power of disposition over it was absolute : and she might exercise it in whatever manner she saw proper, whether by marriage or otherwise. It was hers absolutely to dispose of, as any other property she might possess, at her own free will and pleasure. And upon her subsequent marriage with her present husband, by the law of Alabama, which at the time was the place of their domicil, the

property became his, subject to his sole right of disposition. The Court, therefore, did not err in the instruction given upon the construction of the will, and the law of the case; and the judgment must be affirmed.

Judgment affirmed.