GEORGE W. STAFFORD *et al*. Appellants, *vs*. WHITLEY
READ *et al*. Appellees.

*Opinion filed February 16, 1910.*

1. WILLS—*words "die without issue" have no technical mean-
ing.* The words "die without issue," when used in wills giving a
limitation over in case the first taker shall "die without issue,"
have no technical, judicial meaning, and the question whether such
words shall be construed to mean die without having had issue or
without leaving surviving issue depends upon the intention of the
testator as gathered from the entire will.

2. SAME—*when words "die without issue" will be construed to
mean without having had issue.* Where a will requires the tes-
tator's children to pay certain amounts to the executors, to be in-
vested in land for a certain grandchild and his brothers and sisters,
and provides that if the said grandchild and his brothers and sis-
ters shall "die without issue" the land purchased shall revert to
the children who contributed to its purchase or to their heirs, the
words "die without issue" will be construed to mean without hav-
ing had issue, and the limitation over is defeated by the birth of
a child to one of the first takers.

APPEAL from the Circuit Court of Piatt county; the
Hon. W. G. COCHRAN, Judge, presiding.

This was a bill filed by appellants for the partition of
certain real estate described, and to set aside as a cloud
upon the title of the complainants the will of Ann Maria
Moore Read. Appellants claim title to the land under and
by virtue of the provisions of the will of Thomas Stafford.
The bill alleges that Thomas Stafford resided in Fountain
county, Indiana; that he executed a will on or about the
13th of August, 1847, and a codicil to the said will Au-
gust 31, 1847. The will and codicil are set out in the bill,
and are as follows:

"*In the name of God, Amen.*—I, Thomas Stafford, of
Fountain county, State of Indiana, do make and publish
this my last will and testament, hereby revoking and mak-
ing void all wills by me at any time heretofore made.

"First, I direct that my body be decently interred and that my funeral be conducted in the manner corresponding with my estate and situation in life, and as to such worldly estate as it has pleased God to entrust me with I dispose of the same in the following manner, to-wit: I direct, first that all my just debts and funeral expenses be paid as soon after my decease as possible, out of the first moneys that shall come to the hands of my executors from any portion of my estate. I also direct that all my estate, real and personal, be divided equally between my six children, charged with the conditions and legacies heretofore mentioned, to-wit: My sons, William Neal Stafford, Hugh Alexander Stafford, Oscar Floyd Stafford, and my daughters, Elizabeth Neal Stafford, Polly Ann Stafford and Cyntha Minerva Stafford. My beloved wife, Ruth, to have during her widowhood the messuage and farm, household and kitchen furniture, and the use of the stock on the farm. I direct also that my six children above named pay to my son Lewis Brown Stafford $800 in five equal annual payments, the first payment to be made one year from my decease, unless my said son Lewis prefers sharing with them equally in my real and personal estate, to make his election in one year from my decease. I also direct that my said six children before named (if said son Lewis does not elect to share with them, and if he does, then my seven children,) pay to my son George Washington Stafford $800 in five equal annual payments, the first payment to be made one year from my decease, unless my son George prefers to share equally with my first named children, (and my son Lewis, if he elects to share with them,) his election to be made within one year from my decease. I also direct that my children before named who shall elect to share together equally, shall pay to my executors $700 in five equal payments, the first payment to be made in one year after my decease, my said executors to invest the said money in real estate and the improvements thereof, taking the deed

in their own names but giving up the use thereof to my son Granville McDaniel, and at such times as they think just may make a deed to such lands and improvements to my son Granville or to his heirs. I also direct that $345 be paid by my children who share equally in my estate before mentioned to my executors, the first payment to be made in one year from my decease, which is to be one-fifth of the amount, and the other four-fifths are to be paid in four equal annual payments, the first payment, or one-fifth the money, to be applied by my executors as follows as received: Twenty-five dollars to my grandson James Thomas Westlake Stafford; $20 to my grandson James Clark Stafford; $200 to be laid out in land for my grand-child James Clark Stafford and the brothers and sisters which he has or may hereafter have, all to share equally; and $100 to my daughter Elizabeth Neal Stafford, she being exempted from any portion of this payment. I also direct that the shares of my daughters, if they die without children, descend to their surviving sisters or their descendants, if they have any. If my grandson James Clark Stafford, and his brothers and sisters which he has or may have, shall die without issue, then the said land to revert to the said children before named and their heirs. And I hereby make and ordain my worthy and affectionate sons Lewis Brown Stafford and George Washington Stafford executors of this my last will and testament."

Codicil to will of Thomas Stafford deceased:

"Whereas, I, Thomas Stafford, of Fountain county and State of Indiana, having made and duly executed my last will and testament in our hearing date, the 13th day of August, in the year of our Lord eighteen hundred and forty-seven: Now I do hereby declare this present writing to be a codicil to the said will and desire the same to be annexed thereto as a part thereof. And I do hereby give, bequeath to my son John Wesley one dollar and to my son Granville one dollar. I also direct that my said will be

attested in this: that on the decease of any of my daughters without issue, that their share in my estate, real and personal, (except their wearing apparel, paraphernalia, household and kitchen furniture,) descend to all my children and their descendants, equally, except my sons John and Granville."

The bill alleged that Thomas Stafford died in the latter part of the year 1847, leaving a widow, who also died shortly after his death. There is no allegation in the bill as to how many, and what, children Thomas Stafford left surviving him. The will mentions eight children who bore the testator's name and the codicil one. Counsel on both sides of the case have treated it as if these were the only children surviving the testator, although he mentions another person, who did not bear his name, as his son. We are justified by the briefs and arguments of counsel in assuming that the testator left nine children as his only heirs-at-law, and they were the children mentioned in the will and codicil as bearing the testator's name, and one of them, John Wesley Stafford, took nothing under the will but by the codicil was given one dollar.

The bill alleges the will of Thomas Stafford was duly admitted to probate in Fountain county, Indiana, and that Lewis Brown Stafford and George Washington Stafford were appointed executors of the will. Whether they, or either of them, ever elected to share equally with the other six children in their father's estate instead of taking the $800 is not directly alleged in the bill. It is alleged that the six children named to share equally in the testator's estate, and who are charged with the payment of the legacies, paid the legacies to the executors of the will as therein directed, including the $200 to be invested in land for James Clark Stafford and the brothers and sisters he had or might have. The bill alleges that of the six children mentioned in the will to share equally in the testator's property, four of them, Hugh Alexander Stafford, Oscar

Floyd Stafford, Elizabeth Neal Stafford and Cyntha Minerva Stafford, died leaving no child or descendants of a child; that William Neal Stafford died leaving two children surviving him as his only heirs-at-law, namely, George W. Stafford and Ruth E. Foster; that Polly Ann Stafford died leaving one child, Lillian Catherine Judy, surviving her as her only heir-at-law. These two children of William Neal Stafford and the surviving child of Polly Ann Stafford are the complainants in the bill filed in this case, and the bill alleges that of the six children named in the will to share equally in the testator's property none were represented by any one as heirs-at-law except complainants, and that no one else but complainants had any interest in the premises sought to be partitioned.

The bill further alleges that Lewis Brown Stafford, who is named as one of the executors in the will, entered from the United States government the one hundred and sixty acres of land described in the bill with the $200 paid by the six children first mentioned in the will, to be invested in land for James Clark Stafford and his brothers and sisters; that said land was so entered on February 28, 1850, and on October 19, 1854, Lewis Brown Stafford conveyed the same by warranty deed to James Clark Stafford and his sisters, Ann Maria Stafford and Hannah F. Stafford; that James Clark Stafford had no other brothers or sisters; that he died during his minority, without issue, and that Hannah F. Stafford was never married and died without issue; that Ann Maria Stafford grew to womanhood and married William F. Moore and had two children by him, who died before her death; that the said William F. Moore died eight years ago and his widow married Whitley Read. The bill further alleges that on June 20, 1906, Ann Maria, who was then the wife of Whitley Read, executed a will devising the rents and profits of the land in controversy to the First Christian Church in Atwood, Piatt county, Illinois; that on the 13th of July, 1907, she

executed a codicil, in which she directed the use and rentals of the land be given to her husband, Whitley Read, during his lifetime, if he survived her. The bill also alleges that Ann Maria, while the wife of William F. Moore, conveyed forty acres of the one hundred and sixty entered by Lewis Brown Stafford and conveyed to James Clark Stafford and his sisters, for a valuable consideration; that the purchase was made by the grantee in good faith, without notice of the possible reversionary interest of the complainants.

Ann Maria Read died in the early part of the year 1908 and the bill in this case was filed in about one year thereafter. A demurrer was sustained to the amended bill and a decree was entered dismissing it for want of equity. From that decree the complainants have prosecuted this appeal.

CHARLES R. MILFORD, and M. R. DAVIDSON, for appellants.

ECKHART & MOORE, for appellees.

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Appellants claim, and that is the theory of the bill, that upon the death of James Clark Stafford and his two sisters, leaving no issue surviving them, the title vested in appellants as the only heirs of the six children named in the will of Thomas Stafford, deceased, as intended to share equally in his property. This involves a construction of a portion of the will of said Thomas Stafford.

The six children of the testator first mentioned in the will, and Lewis Brown and George Washington, if they elected to share equally with the six, were required to make certain payments to the executors for the benefit of certain parties named. Among said payments was $200 to be in-

vested in land for James Clark Stafford and the brothers and sisters he had or might have. That provision of the will reads as follows: "Two hundred dollars to be laid out in land for my grandchild James Clark Stafford and the brothers and sisters which he has or may hereafter have, all to share equally. * * * I also direct that the shares of my daughters, if they die without children, descend to their surviving sisters or their descendants, if they have any. If my grandson James Clark Stafford, and his brothers and sisters which he has or may have, shall die without issue, then the said land to revert to the said children before named and their heirs." The construction of this language contended for by appellants is, that the fee in the land purchased with the $200 and conveyed to James Clark Stafford and his sisters could only vest in the children that survived them, and as none of them left children surviving, the property, under the will of Thomas· Stafford, went to them as the only heirs of the six children mentioned in the will. Appellees contend that under the will of Thomas Stafford the fee vested in the issue born to Ann Maria, and that upon the death of such issue before her death she inherited the fee from them. The important question to be determined, then, is whether the language "shall die without issue" should be construed to mean should die without ever having had issue or without issue surviving.

Few subjects in the law have been before the courts of the country oftener than the construction of the words "die without issue," "die without heirs of the body," or "die without issue of the body," used in wills, and few questions have resulted in a greater conflict in the decisions of the various courts of the country. Whatever the rule may be in England, such words in wills have not been given in this country a technical, judicial meaning. The contrariety of views expressed by different courts upon the subject has given rise to the enactment in a number of

States of statutes defining the meaning to be given to such words.

It is universally held by the courts that in construing wills, effect should be given to the intention of the testator if it can be gathered from all the provisions of the will and is not in violation of any rule of law. The difficulty arises in determining what the testator meant by a limitation over if the first taker "die without issue." We believe there is an entire harmony of decisions that if it appears clear, from the entire will, that the testator intended the limitation over to take effect only in case the first taker died without issue surviving him, that intention would be given effect. The difficulty arises from the intention attributed to the testator in different cases involving the construction of the same or similar words. In *Strain* v. *Sweeny,* 163 Ill. 603, the limitation over was in case the first taker "should die without issue of his body." In *Summers* v. *Smith,* 127 Ill. 645, the limitation over was to take effect if the first taker "should die without heirs of his body," and in *Gannon* v. *Peterson,* 193 Ill. 372, the limitation over was upon condition that the first taker "die without issue." In all three of these cases it was held that the testator meant by the use of the words in quotation marks that if the first taker died without issue or children surviving at the time of his death, the limitation over was to take effect. In *Field* v. *Peeples,* 180 Ill. 376, the first taker was given a life estate and a limitation over "in case she dies without issue." In *King* v. *King,* 215 Ill. 100, the devise was to a daughter, with limitation over "in case of her death without issue." *Voris* v. *Sloan,* 68 Ill. 588, involved the construction of a deed to trustees for the benefit of the grantor's daughter and the heirs of her body, with limitation over "in case she should die without issue." In the three last mentioned cases the words in quotation marks were construed to mean not a definite failure of issue, and that under the wills and the deed before the court in those

244—10

cases the fee vested at once upon the birth of a child to the first taker, subject to be diminished as others should be born. The decision in each of the six cases mentioned turned, not upon any technical meaning required to be attributed to the particular words quoted, but upon the intention of the testators and the grantor, gathered from all the provisions of the wills and deed the court had under consideration.

Adopting as our guide in the construction of the language, "if my grandson James Clark Stafford, and his brothers and sisters which he has or may have, shall die without issue," the intention of the testator, to be ascertained upon a consideration of the entire will, we are constrained to hold that the words "shall die without issue" were not intended to mean without issue or children surviving the first takers at the time of their death, but meant if they should die without having had issue or children born to them. The intention of the testator, as we gather it, was to make provision for James Clark Stafford and his brothers and sisters and the children that might be born to them or one or more of them, and that he did not have in contemplation, or attempt to provide for the contingency of, the death of children born to them before their deaths. Under this construction the fee vested in the children of Ann Maria and the limitation over to the heirs of the testator was defeated. Upon the death of said children of Ann Maria the property went to their heirs and not to the heirs of the testator.

The demurrer to the bill was therefore properly sustained, and the decree of the circuit court is affirmed.

*Decree affirmed.*