## GEORGE C. HUGHES v. S. N. MULANAX.

### No. 2277. Decided February 12, 1913.

**1.—Will—Independent Executor.**

If a testator desire to remove his estate from the jurisdiction of the probate court, he can and should do so in plain and unambiguous terms, and any and all doubts as to the jurisdiction of that court should be resolved in its favor. Epperson v. Reeves, 35 Texas Civ. App., 167, criticised and distinguished. Berry v. Hindman, 61 Texas Civ. App., 291, approved. Carlton v. Goebler, 94 Texas, 97, distinguished. (Pp. 581-585.)

**2.—Same—Sale of Property.**

It would seem that, if the legal effect of a will was to remove the estate from the jurisdiction of the probate court, its effect would be to confer upon the executor power to sell for the payment of debts. Provisions restricting the executor's right to sell lands, would have to yield to that directing the debts to be paid, or be held to apply only to lands held by the executor for the devisee after payment of the debts. (P. 581.)

**3.—Same—Same—Jurisdiction of Court—Case Stated.**

A will, after providing for payment of all debts, devised testator's entire property to a minor, and appointed an executor with authority to manage the estate till the devisee attained majority, to sell personal property and invest the proceeds, requiring him to give and maintain bond in a named amount, and "in all things act as to him may seem best for the interest of my estate and independent of the control of any probate court." The executor was forbidden to sell, mortgage, or incumber the real estate, and was required to make certain money payments from time to time for the benefit of the devisee, and to "make his annual reports as such executor to the proper probate court, which annual reports shall be acted on by said court in the same manner as the annual reports of other executors and administrators." The executor, duly qualified and authorized to administer the estate "according to law and the provisions of said will," obtained from the court an order to sell certain real estate to pay debts and expenses of administration shown by his application, and such sale was regularly made and confirmed and conveyance executed. Held, that the will was not sufficient, under article 1995, Revised Statutes, to remove the estate beyond the jurisdiction of the probate court and thereby to deprive that court of the power to cause the land to be sold for the payment of debts.   (Pp. 578-585.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Coleman County.

*J. P. Ledbetter,* for appellant.—The following language has been held to be sufficient to remove the estate from the jurisdiction of the Probate Courts: "I wish my estate to be kept out of the Probate Court." Pierce v. Wallace, 48 Texas, 399-401; Patten v. Cox, 9 Texas Civ. App., 299. "Directing that the testator's estate by administered without action of the Probate Court," Holmes v. Johns, 56 Texas, 41. "Without any interference of the Probate Court," Epperson v. Reeves, 35 Texas Civ. App., 167.

The fact that this will directs that his executors shall file annual reports in the Probate Court to be acted on as annual reports of other executors, does not destroy the independent character of the executorship under the will. Epperson v. Reeves, 35 Texas Civ. App., 167.

The Probate Courts have no jurisdiction over independent executors or estates administered by such independent executors as long as they continue to act, and all such orders, decrees and judgments by said courts relating to the administration of such estates are null and void and are subject to collateral attack. Rev. Stats., arts. 1995, 2015; McLane v. Belvin, 47 S. W., 493; Lumkin v. Smith, 62 Texas, 249; Ellis v. Mabry, 25 Texas Civ. App., 164; Holmes v. Johns, 56 Texas, 40-51; Wells v. Houston, 56 S. W., 233; Freeman v. Tinsley, 40 S. W., 835; Gray v. Russell, 41 Texas Civ. App., 526; Epperson v. Reeves, 35 Texas Civ. App., 167.

The Legislature having expressly declared that the provisions and terms of a will after being probated shall be executed unless annulled or suspended by order of the court probating the same, and having specifically prescribed the legal procedure by which same must be annulled or suspended, such declarations and procedure become mandatory and exclusive, and absolutely binding upon executors and all the courts of the State, and should the courts disregard same, it would be nothing short of attempted judicial legislation, to repeal,

nullify and destroy legal legislation. Rev. Stats., arts. 1991-2-3 and 4. See also art. 2007, which contains the following mandatory language: "And when any particular directions are given by the testator in his will respecting the sale of any property belonging to his estate, the same shall be followed unless such directions have been annulled or suspended by order of the court, as hereinbefore provided." The above statutory provisions have been respected and followed by the Supreme Court and the Courts of Civil Appeals in the following adjudicated cases: Prather v. McClennan, 76 Texas, 574; Alderdyce v. Hambleton, 96 Texas, 30; Springfellow v. Early, 15 Texas Civ. App., 597.

*Snodgrass & Dibrell* and *Williams & Stedman,* for appellee.

MR. JUSTICE HAWKINS delivered the opinion of the court.

The Court of Civil Appeals for the Third Supreme Judicial District has certified for our decision two questions which, with its statement of the case, are as follows:

"In the above entitled cause pending in the Court of Civil Appeals for the Third Supreme Judicial District on motion for rehearing, the questions stated below have arisen, among others, which said court deems it advisable to certify to the Supreme Court for decision. The case is an action of trespass to try title brought by appellant, Hughes, to recover of appellee, Mulanax, a tract of 160 acres of land to which the plaintiff asserts title as devisee under the will of George W. Jones, deceased, and which is claimed by defendant under a sale thereof made by the executor of said will under orders of the County Court of Coleman County to pay debts of Jones' estate. The questions are as to the validity of such sale and arise out of the will referred to, which is as follows:

" 'I, George Washington Jones, of Glen Cove in Coleman County, and State of Texas, being of sound and disposing mind and memory, hereby make and publish this my last will and testament, revoking all former wills by me at any time heretofore made. First, I direct that my executor hereinafter named pay all my just debts and discharge promptly all my legal obligations.

" 'Second. I give and devise to George Calvin Hughes, minor son of T. R. Hughes and M. M. Hughes of Glen Cove in said County of Coleman, all my property and estate, real, personal and mixed, whether acquired before or after the making of this my will and whether situated within or without the State of Texas, to be managed and controlled as hereinafter provided until he shall attain the age of twenty-one years, when the title thereto and all of the unexpended increase and revenues thereof shall vest absolutely in him.

" 'Third. I nominate and appoint my friend, Calvin Holmes, of Santa Anna in said Coleman County, sole executor of this my will, and request that he continue to act as such executor and carry out the provisions hereof until said minor shall attain the age of twenty-one years.

" 'Fourth. I direct that my said executor, after probating this my will, qualify in the manner, in such cases, prescribed by law,

except that he shall be required to give bond as such executor in the sum of Two Thousand Dollars only and shall continue to act under a good and sufficient bond in said sum during the pendency of said executorship.

" 'Fifth. I direct that my said executor shall, within two years after the probate hereof, or as soon thereafter as he may deem advisable and practicable, sell and dispose of all the personal property belonging to my estate, at such times and on such terms as to him may seem best for the interest of said estate.

" 'Sixth. I direct that my said executor take charge of all the real property belonging to my estate and rent and lease the same and all real property hereafter acquired under the provisions hereof, and collect all rents due and to become due on said lands until said minor shall attain the age of twenty-one years; provided he shall not sell, mortgage nor in any way incumber said real property, except that in making purchases of real estate as hereinafter provided, he may create a vendor's lien on the land purchased provided such lien and the note secured thereby shall not exceed the sum of Five Hundred Dollars.

" 'Seventh. I direct that my said executor shall at times, in such sums and on such terms as to him may seem best, loan on good and sufficient security any and all moneys coming into his hands as such executor, until the amounts so coming into his hands shall amount to the sum of One Thousand Dollars, when he shall, as soon as practicable thereafter, invest said moneys in real estate for said George Calvin Hughes, and may create a vendor's lien on the real estate so purchased not to exceed the sum of Five Hundred Dollars.

" 'Eighth. After my said executor shall have qualified in the manner prescribed by law and under the provisions hereof, I direct that he shall in all things act as to him may seem best for the interest of my estate and independent of the control of any Probate Court, except that he shall make his annual reports as such executor to the proper Probate Court, which annual reports shall be acted on by said court in the same manner as the annual reports of other executors and administrators.

" 'Ninth. I direct that my said executor shall, for the use of said minor, out of any moneys coming into his hands, pay to his parents or to either of them, on the first days of May and November of each year, the sum of Ten Dollars until said minor shall became twelve years, and shall thereafter until he shall become fifteen years of age, on the first days of May and November in each year, pay them for him the sum of Fifteen Dollars, and when· said minor shall become fifteen years of age my said executor shall, on the first days of the aforesaid months of each year until he shall attain the age of twenty-one years, pay to said minor in person, or to some one authorized by him to receive it, the sum of Twenty-five Dollars.

" 'Tenth. Should the said Calvin Holmes fail or refuse to qualify, or at any time resign or refuse to longer act as such executor, I hereby name and appoint J. E. McDavid as his successor as executor hereof and direct that he qualify in the same manner and execute the

provisions hereof as the said Calvin Holmes is herein empowered and authorized to act.

" 'Eleventh. Should said minor die leaving surviving him neither children nor descendents of his children, then all the property herein devised to him, together with all of the unexpended increase thereof, shall descend to and vest in my legal heirs according to the laws of descent of the State of Texas.

" 'In witness whereof I have hereunto set my hand, this the eleventh day of May, A. D. 1892, in the presence of J. M. Lancaster, W. J. Little and W. O. Read, who attest the same at my request. George Washington Jones. Signed by said J. M. Lancaster, W. J. Little and W. O. Read as attesting witnesses.'

"This will was duly probated by order and entered at the April Term, 1893, of the County Court of Coleman County on the application of Calvin Holmes, named as executor, who at once qualified by giving the bond required by the will and taking the prescribed oath. The order merely established the will and adjudged that Holmes be authorized to qualify 'according to law and the provisions of said will as executor,' and that he enter into bond as provided in the will and return inventory, etc. An inventory was duly filed and recorded in May, 1893, including the land in controversy, and some personal property. In October, 1893, on application of J. E. McDavid showing that Holmes had resigned, the court issued letters testamentary to the former instead of the latter. McDavid qualified and returned an inventory in due time. No further action in court is shown until March, 1895, when McDavid, as executor, filed an application for an order to sell the land in controversy, to pay debts and expenses stated in the exhibit of the condition of the estate accompanying the application. The sale applied for was duly ordered and in proper time thereafter the sale was made in compliance with such order and reported to and confirmed by the court, and a deed was duly executed by the executor to the purchaser, who paid the price ($1,000.00) at which the land had been sold, and subsequently conveyed the land to the appellee.

"There were subsequent actions in court in 1902 by which McDavid resigned, accompanying his resignation with a final account which was approved by order of court, and another person was appointed administrator de bonis non with the will annexed. This administration was pending when this action was brought, appellant suing as devisee on the ground that the administrator refused to sue for the recovery of the land.

"The sale by the executor was sufficient to divest title out of the estate and out of appellant unless it was void for one or the other of the reasons assigned by appellant, which present the questions certified. These are:

"First, that the will expressly denied to the executor the power to sell the land and was of such a character as under Article 1995, Revised Statutes, also to deprive the County Court of all jurisdiction over the estate after the probating of the will and return of an inventory, and of all power to authorize a sale of the property to pay

debts, so that the sale was made without lawful authority and therefore void.

"Second, that the provision of the sixth clause of the will, that the executor should not sell the real property, which provision was established by the probate thereof and not annulled as provided by Articles 1991 to 1994, Revised Statutes, operated, by force of Article 1991, to deprive both the executor and the court of power to make or cause to be made a sale of the land to pay debts. This contention was sustained by this court, in an opinion, a copy of which is sent up with this certificate.

"The questions certified are:

"First, was the will sufficient under Article 1995 to remove the estate beyond the jurisdiction of the Probate Court and thereby to deprive that court of power to cause the land to be sold for the payment of debts?

"Second, did the provision in Article 1991, alone or in connection with others, give to the sixth clause of the will and the probate thereof the effect contended for as above stated and as held by this court?"

Said statutory provisions are as follows:

"Art. 1991. When a will has been probated, its provisions and directions shall be executed, unless the same are annulled or suspended by order of the court probating the same in a proceeding instituted for that purpose by some person interested in the estate." (Rev. Stats., 1911, art. 3258.)

"Art. 1995. Any person capable of making a will may so provide in his will that no other action shall be had in the County Court in relation to the settlement of his estate than the probating and recording of his will, and the return of an inventory, appraisement and lists of claims of his estate." (Rev. Stats., 1911, art. 3362.)

One analysis of which this case seems susceptible is this: If the legal effect of the will was to remove the estate from the jurisdiction of the Probate Court, its effect, when properly construed, was, also, to confer upon the executor authority to sell land to pay debts. It would seem that the provisions in paragraph sixth setting out restrictions upon the authority of the executor to sell or mortgage land, if in conflict with directions to the executor to pay all the just debts and in all things to act as to him may seem best for the interest of the estate and independent of the control of the Probate Court, should yield to them; and, moreover, that said restrictions should, perhaps, be held to apply to only lands which might be held by the executor merely as a trustee for the minor devisee after payment of said debts. On the other hand, if the will left in that court jurisdiction over the estate, the court had the right to order the land sold for the payment of debts. The result, in either contingency, is to uphold this conveyance by the executor. However, not resting our decision upon that analysis, and confining ourselves more closely to the certified questions, we come at once to the vital issue presented, which is: Did this will remove the estate from the jurisdiction and control of the Probate Court?

We think it did not.

Ordinarily, and in the absence of a will, the estate of a decedent is, under our laws, in all respects primarily within the jurisdiction and under the control of the County Court which, in referring to estate matters, is also called the Probate Court.  Const., art. 5, sec. 16; Rev. Stats., 1911, title 52.

Art. 3376 (2009) Revised Statutes, 1911, is as. follows:

"The administration of an estate under a will shall in all respects be governed by the provisions of the law respecting the administration of intestates' estates, except where it is otherwise provided by law or by the provisions and directions of the will."

The exceptional case is, therefore, that in which there is a valid will; and in even such exceptional case the ordinary jurisdiction of the Probate Court over the estate remains intact and unimpaired except as to features concerning which it is otherwise provided by law or by the will itself.  Smithwick v. Kelley, 79 Texas, 564, 15 S. W., 486; Gray v. Russell, 41 Texas Civ. App., 526, 91 S. W., 235; In re Grant's Estate, 93 Texas, 68, 53 S. W., 372; Altgelt v. Alamo Natl. Bank, 79 S. W., 587.

A well settled and elementary, and, in fact, the cardinal, rule in the construction of wills is that the intention of the testator, in so far as it is not in conflict with law, should be ascertained and followed.

In Cooper v. Horner, 62 Texas, 362, the following was quoted approvingly: "Where the general intent of the testator is clear, and it is impracticable to give effect to all the language of the instrument, expressive of some particular or special intent, the latter must yield to the former; but every expressed intent of the testator must be carried out where it can be.  And the general intent overrides all mere technical and grammatical rules of construction."  1 Redf. on Wills, 433, 434 (star pages).

In Cleveland v. Cleveland, 89 Texas, 449, 35 S. W., 145, the rule was thus stated by this court: "The intention of the testator as shown by the language used in the instrument must govern, even if it result in what we might consider unjust or absurd consequences. This intention must be ascertained by considering the entire instrument, and the language of a single clause of it will not govern what is the evident intention in the use of that language when read in connection with the other provisions.  Lake v. Copeland, 82 Texas, 464, 17 S. W., 786; McMurray v. Stanley, 69 Texas, 227, 6 S. W., 412; Peet v. Railway Co., 70 Texas, 526, 8 S. W., 203; Faulk v. Dashiell, 62 Texas, 642; Vardeman v. Lawson, 17 Texas, 18."

It must be conceded, we think, that several provisions of the will in the case at bar strongly support the theory that the testator's general intention was and that in said will he undertook to direct that his estate should, in most respects, be removed from the jurisdiction and control of the Probate Court.

In the first paragraph of the will the executor is directed, unequivocally, to pay all the testator's just debts.  Other paragraphs which we will not specifically mention also tend to support that view.

The eighth paragraph declares that after the executor shall have qualified in the manner prescribed by law and under the provisions of the will "he shall in all things act as to him may seem best for

the interest of the estate.'' And then, as if to emphasize the broad powers so conferred upon the executor, and rivet the testator's general purpose to leave the executor untrammeled by the orders of that court relating to the sale of property, the will adds that such prescribed action by the executor shall be ''independent of the control of any probate court, except that he shall make his annual reports as such executor to the proper probate court, which annual reports shall be acted on by said court in the same manner as the annual reports of other executors and administrators.''

This court has heretofore given very broad effect to language in a will expressing a desire of the testator that his estate be taken out of the ordinary jurisdiction of the probate court.

In Carlton v. Goebler, 94 Texas, 97, 58 S. W., 829, this court speaking through Mr. Chief Justice Gaines, said: ''We think that the appointment of an executor with a direction in the will that 'no other action shall be had in the county court in relation to the settlement of his estate than the probating and recording of his will and the return of an inventory,' etc., without other provisions either enlarging or restricting his powers, confers upon him authority to do, without an order of court, every act which an administrator could perform with such order. Such is the established rule under our statute.'' In that case, however, the testator did not, as he did in this case, invoke the exercise by that court of extensive jurisdiction over the estate in addition to the probating and recording of the will and the return of an inventory, appraisement and list of claims of the estate. But we believe that the rule so announced in the Carlton case cannot be fairly or properly applied to the will which is before us.

Effect must here be given to the exceptions set forth in said paragraph eighth, requiring that the executor shall make his annual reports, as such executor, to the probate court, and that such reports shall be acted on by said court in the same manner as the annual reports of other executors and administrators; and these two requirements, coupled together, are, in our opinion, wholly and hopelessly inconsistent with any idea of an independent administration of the estate.

The action of the probate court in examining and in approving or disapproving an executor's annual report necessarily brings into review before it every act of the executor during the year, and may call for the exercise by the court of far-reaching powers of supervision and control over the executor and over the estate. The provisions of paragraph eighth of this will thus present a striking antithesis, involving, at the same time, independent management of the estate by the executor, and control of the estate by the probate court. Which of these contradictory provisions should prevail?

We believe that our statutes relating to the jurisdiction and operation of the probate court, as those statutes have long been construed by the courts and generally understood by the bar of this State, and sound public policy alike require that we hold, as we do, that inasmuch as this testator has not, in his will, brought that instrument fully within the scope and effect of said Article 1995, in that he failed

to express a desire that his esteate be taken entirely out of that court except in the particulars wherein the statute does not permit that to be done, but did, on the contrary, expressly invoke therein the exercise by that court of broad and potential jurisdiction over said estate, that jurisdiction must be recognized and upheld; and that, as a corollary, the right of the executor, acting independently of that court, to sell the land in controversy must be denied.

The point upon which we rest this decision may be illustrated by reference to Epperson v. Reeves, 35 Texas Civ. App., 167, 79 S. W., 845. In that case a portion of the will was as follows:

"I hereby provide that my executors shall not be required to give any security, nor shall they be required to procure any orders from the County Court or any other court for the management of my estate, but they shall manage the same without any interference of the court, except that they shall have this will probated  and shall file an inventory of the property which comes to their hands as executors, and from year to year a report showing the condition of the estate, which may be seen by creditors and heirs."

We make this excerpt from that opinion:

"Appellant insists that all action of the probate court was not dispensed with in reference to the estate, and the estate not withdrawn in the meaning of the statute, because the will directed the executors to file a report from year to year showing the condition of the estate, which may be seen by creditors and heirs.  This, in our opinion, was not intended as any restriction on the exercise of the powers granted to the executors, nor as intended to give the court supervision over the acts of the executors in the administration of the estate, and, this being so, the powers of the executors were as ample with this provision in the will as without it.  Besides, the provision expressly states the purpose of its filing to be that it may be seen by creditors and heirs, and did not contemplate that it should be audited by the court, and the acts of the executors embodied in it approved or disapproved."

The material difference, in that respect, between the Epperson will, in that case, and the Jones will, in this case, is obvious.  However, we do not wish to be understood as endorsing the proposition which was advanced in that case by the Court of Civil Appeals, apparently as dictum, to the effect that even though the will in that case had left with the court the power to approve or reject the annual reports of the executor the independent character of the executorship would not have been disturbed.

That this Jones will does not contemplate a wholly independent management of the estate by the executor is suggested by the fact that the will does not wholly waive the giving by the executor of security, but, in the fourth paragraph, arbitrarily, fixes at two thousand dollars his bond for which it stipulates with the direction that he "shall continue to act under a good and sufficient bond in said sum during the pendency of such executorship." Who, if not the court, is to see, from time to time, until the minor shall attain his majority, that the bond is "good and sufficient"?

stantially the restrictions which are imposed upon him by said Art. 1995 may, according to his own desires or caprices, practically prescribe in his will the extent of the jurisdiction and control which the probate court may exercise over his estate, such holding would, in many instances, we fear, tend to derange our probate system, to create confusion as to rights and remedies of persons interested in such estate, and to render and leave uncertain both jurisdiction and procedure in the courts. Rev. Stats., 1911, arts. 3369, 3370, 3371, 3372, 3235, 3404 to 3412 and 3414 to 3419.

We think that if it be the desire of a testator to remove his estate from the jurisdiction of the probate court, except as forbidden by law, he can easily do so, and should do so, in plain and unambiguous terms, and that any and all doubts as to the jurisdiction of that court should be resolved in its favor.

In Berry v. Hindman, 61 Texas Civ. App., 291, 129 S. W., 1181, it was said: "It would therefore seem to be essential, whether the language of the statute is followed or not, that the provisions relied upon for construing an instrument as an independent will should be couched in terms clearly showing a desire on the part of the testator to exclude the active supervision and control of the County Court" * * * "In such cases we believe the interest of those concerned is best conserved by resolving the doubt in favor of the jurisdiction of the probate court."

In view of our conclusions, as above stated, and as the sale and conveyance of the land in controversy by the executor finds its ultimate support in the jurisdiction and orders of the Probate Court rather than in the independent power and authority of the executor, under the will, to sell and convey said land, we consider the second certified question immaterial. We accordingly answer the first certified question negatively, and make no answer to the second.