### GIRAUD et al. v. CROCKETT et al.
### No. 9031.

Court of Civil Appeals of Texas. Austin.
June 19, 1940.

Rehearing Denied July 10, 1940.

Spears, Conger, Baskin & Spears, of San Antonio, for appellants.

Swearingen & Miller, of San Antonio, for appellees Comanche Pipe Line Co. and Atlantic Refining Co.

White, Taylor & Gardner, of Austin, for other appellees.

Richard S. Brooks, of Austin, guardian ad litem for minor children of appellees herein.

BLAIR, Justice.

This is a suit to construe the holographic will of E. A. Giraud, deceased. He died in Travis County, July 9, 1921, and his will was admitted to probate October 4, 1921. The independent executors named in the will qualified October 20, 1921, and the inventory and appraisement of the estate was filed and was approved January 21, 1922. The will, except that for convenience we number the paragraphs, reads as follows:

"The State of Texas,
"County of Travis.

"1st. I, E. A. Giraud, of said County and State, do hereby declare this my last will

and testament:—I leave no debts subject to demand or execution and such current bills as I may leave I desire liquidated at once.

"2nd. I owe some unpaid balances on School Lands to the State of Texas and some rentals on State and other mineral leases, which I request my executors to keep in good standing and dispose of as soon as practicable.

"3rd. ; I own some 33 pertenencias in four mining claims in the 'Papanton' State of Durange, Mexico, and the real estate they cover and adjacent thereto, as well as the 'Hacienda de Beneficio' known as 'La Vafrica' and ground adjacent thereto in the City of Santiago Papasquiaro, together with an aqueduct of some three kilometres in length leading to said 'Hacienda' and a water right from the town Creek as will appear by the Public Archives at the cities of Durango and Santiago, Papasquiaro; the said 'La Fabrica' grounds and water rights and aqueduct, having been acquired through mesne conveyances from Julio Rodriquez et al; all of which Mexican property is but of small real value at present; I have been carrying in trust for my brother, Francis M. Giraud, of San Antonio, Texas, two-tenths interest in the mines and lands there at, or thereabouts and one-fourth interest in the Santiago Papasquiaro property and water rights, etc., but I now devise to him sufficient of my interest to make his holdings an undivided two-fifths (2/5) in the whole of said property in the Republic of Mexico, free of any claims from my estate for taxes, etc., up to the date of my demise, but subject to the right of any executors to convert the whole of said property into cash and account to him for his interest; Mr. Gerald E. Norton, of Durango, Mexico, is my agent, and the taxes are payable, during Jany., May and September of each year in advance of 4 mos. periods, and I further bequeath to him, F. M. Giraud, Seventy-five Hundred Dollars out of my estate, when realized in the ordinary course of administration.

"4th. I bequeath to my half-sister, Mrs. A. M. Raphall, of San Antonio, Texas, Twenty-five Hundred Dollars out of the first moneys available from my estate.

"5th. I have two daughters, my sole issue, Frances Caroline and Virginia Wilkinson, both feme soles; they have a separate estate as will be shown by my income tax returns as their agent and the records of Brazoria County, Texas. In no other county in Texas or elsewhere do we hold a community interest.

"6th. I give and bequeath all of my property, real, personal or mixed, and wherever situated to my daughter, Virginia W: and enjoin upon her that if owing to loss of health or from any other cause or reason her sister, Frances C. should be compelled to abandon the Holy Cross Sisterhood, which she had elected to enter, that she shall divide, share and share alike with her, the property herein bequeathed to her solely; but no part of my separate estate is by this (my) will vested in my daughter Frances C. except in the contingency herein provided for, or in the event of my daughter, Virginia W. dying without issue, then Frances C. if she should survive her, is to inherit and dispose for herself or for some charitable purpose, exclusive of her own sisterhood, or to her relatives, one-half of my estate—the other half to go to my brother, Francis M. or his heirs.

"7th. If my daughter, Virginia W. should die without issue and my daughter Frances C. not survive her, then three-fourths of my estate shall go to my brother, Francis M., or his heirs, and the remaining fourth to my brother, Leon J., or his heirs.

"8th. I hereby appoint my friends, William L. Stark and Ike D. White, both of Travis County, Texas, executors of this my will and request that no bond be required of them and that the Probate Court have no control of my estate other than requiring them to file an inventory, appraisement, and list of claims. My said executors shall administer my estate disposing of the Mexican property and wild lands as soon as practicable at such prices and on such terms as they may deem to the best advantage of my estate investing the proceeds in interest bearing securities.

"9th. Such stocks and bonds as I may die possessed of are to to held in trust for my daughter, Virginia W. and the income therefrom and from such additional securities as they may purchase after deducting costs of administration shall be paid to my said daughter from time to time when realized, but no part of the principal of my estate shall be paid her until she attains the age of thirty years, if unmarried, or until five years after marriage, unless some grave necessity should warrant it, and as to this I leave my executors to judge. After arriving at the age of thir-

ty years unmarried or a feme sole or after five years of married life, she will be entitled to demand full possession of my estate from my executors.

"10th. In the event of the death, refusal or inability of one of my executors to act, the other shall perform all the duties hereunder, but in the event both should refuse or be unable to act hereunder, then and in that event I leave it to my daughter, Virginia W., to name the administrator hereunder under the direction of the Probate Court until the termination of the five year period after marriage or until she attains the age of thirty years unmarried and thereafter *is* she should not elect to take personal charge of the estate, which she shall have the right to do.

"Written with my own hand and I now sign it as my act and deed this 27th day of October, A. D. 1920, in the City of Austin, Texas.

"E. A. Giraud."

The evidence showed that testator was married once; that his wife died in 1904; that he never married again; that the two daughters of this marriage survived him and are referred to in the will as "my sole issue, Frances Caroline and Virginia Wilkinson, both feme soles." Frances C. died in the year 1933 without issue, and at the date of her death she was still a member of the Holy Cross Sisterhood.

The evidence further showed that the special bequests were paid by the executors. The interest of F. M. Giraud in the Mexico land was tendered to him and refused by him; and the Mexico land was abandoned because found to be worthless. The $7,500 bequest was paid to F. M. Giraud.

The evidence further showed that appellee Virginia W. Giraud married John G. Crockett on October 4, 1921, and of this union two daughters, Constance Eugene and Carolyn Giraud Crockett, were born, and that they were at the time of the trial about 16 and 14 years of age, respectively, and were in good health. They were represented in the suit by a guardian ad litem, who adopted the construction placed on the will by their mother; and by brief in this court the same position is taken by the guardian ad litem. When Virginia W. had been married five years all of the estate of testator was turned over to her, in accordance with the terms of the will.

Except a small amount of community property in Brazoria County, the lands were the separate property of testator, which consisted of the Mexico lands, which were abandoned, and other unimproved or "wild" lands in Texas; and although the will authorized the executors to sell the lands, appraised at $49,835, and to invest the proceeds in bonds and securities like those owned by the testator, this was not done and the lands were by the executors conveyed and delivered to appellee Virginia W. Crockett, together with the personal property of testator, which consisted of money, stocks, bonds, and other securities of the appraised value of $109,202.-51, when she had been married five years.

Frances M. and Leon J. Giraud, the brothers of testator mentioned in the will, are dead, each having died after the death of testator, and their heirs, a part of whom are appellants, are parties to this suit.

Appellees Comanche Pipe Line Company and the Atlantic Pipe Line Company owned mineral leases on some of the lands involved, but such interest is not in controversy; the judgment being confined to a construction of the will only.

A controversy arose between appellants and Virginia W. Crockett, which caused her to file this suit for the construction of the will in question. She alleged and the trial court found under the facts adduced that it was the intention of the testator to give and bequeath to her all of his property, except the special bequests, and to vest in her the fee-simple title to all of his property and estate, in the event she survived him and reached the age of thirty years, or when she had been married for a period of five years.

It is the contention of appellants that properly construed the will vested in appellee, Virginia W. Crockett, only a determinable or base fee at the death of the testator, and that the fee-simple title to the estate cannot be finally determined until her death, when upon failure by her to leave issue surviving the estate would pass to and vest in his two brothers or their heirs, as directed in the will.

We have reached the conclusion that the trial court has correctly construed the will.

The will as a whole shows an intelligent effort of testator to carefully dispose of his properties, and that the particular objects

of his bounty and care were his two daughters. He made certain specific devises and bequests to certain relatives, and as to the remainder of his estate he stated that "I give and bequeath all of my property, real, personal or mixed, and wherever situated, to my daughter Virginia W." In the contingency provided for Frances C, if she for any reason abandoned the Holy Cross Sisterhood, testator referred to the fact that his property had been "bequeathed to her (Virginia W.) solely," and that "no part of my separate estate is by this my will vested in my daughter Frances C., except in the contingency herein provided for." Testator also directed that his executors sell the real estate and invest the proceeds in interest-bearing securities;. and that his stocks, bonds, and the interest-bearing securities so purchased by. the executors be held in trust for his daughter Virginia W., which property was . by testator "bequeathed to her solely." Whether this direction to sell the real estate and convert it into personal property constituted in law a command to convert the real estate into personal property, need not be determined here, because it is clear that. testator so directed and thought it would be done, and his intention to .vest title to Virginia W. must be viewed from that standpoint; and the law of transfer of personal property by delivery is applicable. The fact that the real estate was not so sold and invested is not material, because by plain and explicit language testator gave and bequeathed all of his property, real, personal, or mixed to Virginia W., "solely," and directed that "after arriving at the age of thirty years unmarried, or a feme sole, or after five years of married life she will be entitled to demand full possession of my estate from my executors." Thus testator or settlor expressly terminated the trust and directed the delivery of the trust estate to his daughter without limitation or condition, which by express language he had "bequeathed to her solely." The same provision as to vesting of title to. all of testator's property and delivery of it to Virginia W. was made by testator in providing that if both executors failed or refused to .act, then the administration in the probate court should terminate when Virginia W. reached the age of thirty years, or had been married for five years, at which time she was given absolute authority to take personal charge of the estate.

The contingency provided for Frances C. never came into existence, because she died in 1933, at which time she was still a member of the Holy Cross Sisterhood. The other contingency that if Virginia W. should predecease Frances C. without issue, never occurred, because Virginia W. was living at the time of the death of Frances C. and had two children. And in any event both of these contingencies ceased to exist when under the express provisions of the will Virginia W. had been married five years, at which time the fee-simple title to all the estate vested in her, and the entire estate was delivered to her as directed by the will.

■ ■ Appellants' main contention is that as to them only a determinable or base fee was vested in Virginia W. by the seventh paragraph of the will, which provides: "If my daughter, Virginia W. should die without issue and my daughter Frances C. not survive her, then three-fourths of my estate shall go to my brother, Francis M., or his. heirs, and the remaining fourth to my brother, Leon J., or his heirs."

But the contingencies thus provided for are controlled by the manifest intention of testator, as gathered from his entire will, to vest the fee-simple title in Virginia W. when she reached the age of thirty years, or had been married five years; and the contingencies provided for in the seventh paragraph ceased to exist when Virginia W. had. been married five years, and at which time the entire estate was delivered to her as directed by the will. By no language did testator continue the trust after the property was delivered to Virginia W. in accordance with the terms of the will, and the courts cannot add any language to the will which would continue the trust after Virginia W. had been married for five years. If testator had so intended, it would have been an easy matter for him to have said so. And since testator clearly intended that the fee simple or full title to all of his property should vest in Virginia W. when she reached the age of thirty years or had been married for five years, all of the contingencies of survivorship ceased to exist when under the facts she was shown to have been married five years. This conclusion is based upon the cardinal rule of construction that the court must consider all of the provisions of a will and must construe it so as to ascertain and effectuate the intention of the testator. Hughes v. Mulanax, 105 Tex. 576, 153 S.W. 299; Gallagher v. Redmond, 64 Tex.

622; Federal Land Bank v. Little, Tex. Civ.App., 79 S.W.2d 645; Jones v. Hext, Tex.Civ.App., 67 S.W.2d 441, error refused; 44 Tex.Jur., 680, sec. 134.

■ Our construction of the will as vesting the fee-simple title in Virginia W. when she reached the age of thirty years, or had been married five years, is also supported by the uniform rule of our courts that they will not construe a remainder as contingent when it can be reasonably taken as vested, because the law favors a construction which will result in the vesting of title to an estate created by will at the earliest time, and unless a later time is clearly expressed or necessarily implied. Capels v. Ward, 107 Tex. 341, 179 S.W. 856; Anderson v. Menefee, Tex.Civ.App., 174 S.W. 904; Jones v. Hext, supra; and Federal Land Bank of Houston v. Little, Tex.Civ.App., 79 S.W.2d 645.

■ Having construed or interpreted the entire will as showing the intention of testator to give and bequeath the remainder of his estate to his daughter Virginia W. when she reached the age of thirty, or had been married five years, no useful purpose can be served by a lengthy discussion of the meaning of the provision that, "if my daughter Virginia W. should die without issue * * *," then the estate should go to testator's brothers or their heirs. Suffice it to say that the several authorities cited by appellants which show the difficulties and conflicts found in the decisions in determining what the testator meant by a limitation over if the first taker should "die without issue surviving," are not applicable; because in the instant case the intention of the testator, as ascertained from a consideration of his entire will, clearly showed that he intended to vest the fee-simple title to the remainder of his estate in his daughter Virginia W. when she reached thirty years of age, or had been married five years. Thus testator specifically provided that the limitation over in favor of his brothers, or their heirs, was applicable only until Virginia W. reached the age of thirty years, or had been married five years, in either of which events the fee-simple title to the entire estate vested in her. And in any event, the provision of the will in the instant case, that "if Virginia W. die without issue," cannot be interpreted to mean "die without issue surviving" her. This question on both fact and principle was determined in the

case of Stafford v. Read, 244 Ill. 138, 91 N. E. 91, 94, wherein the court say: "* * we are constrained to hold that the words 'shall die without issue' were not intended to mean without issue or children surviving the first takers at the time of their death, but meant if they should die without having had issue or children born to them. The intention of the testator, as we gather it, was to make provision for James Clark Stafford and his brothers and sisters and the children that might be born to them or one or more of them, and that he did not have in contemplation, or attempt to provide for the contingency of, the death of children born to them before their deaths. Under this construction, the fee vested in the children of Ann Maria and the limitation over to the heirs of the testator was defeated."

The uniform decisions of other states are to the same effect, and no Texas case is cited or has been found by us, which holds that the words, "die without issue," mean "die without issue surviving." The facts bring the instant case clearly within the rule quoted, because Virginia W. Crockett has two living children. And since the will uses the words, "die without issue," and children were born to the first taker (Virginia W.) the fee title vested in her to the estate of testator, and the limitation over to the brothers or their heirs was defeated.

The judgment of the trial court is affirmed.

Affirmed.

On Appellants' Motion for Rehearing.

In their motion for rehearing, appellants contend that we are inconsistent in holding that "the particular objects of his (testator's) bounty and care were his two daughters," and our holding that testator intended to vest title in Virginia W. when she had been married five years, which was seven years before the death of Frances C. It is true that testator provided for the contingency and directed that if for any reason Frances C. abandoned the Holy Cross Sisterhood, then Virginia W. should give her one-half of the property, which testator said he had "bequeathed to her (Virginia W.) solely." This contingency never happened, because Frances C. died while she was still a member of the Holy Cross Sisterhood. Nor is this provision of the will related in any manner to para-

graph 7, under which appellants' sole contingency existed; and which contingency we held ceased to exist, as set forth in our opinion. The motion for rehearing is overruled.

Overruled.